UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:20-CV-177 (WOB-CJS)

WENDY VANDERAA                                               PLAINTIFF

VS.                    **MEMORANDUM OPINION AND ORDER**

JAMES E. BRUCE                                               DEFENDANT

Currently pending before the Court is Defendant's motion to enforce a settlement agreement and award attorney's fees. (Docs. 20, 21). The Court concludes that oral argument is unnecessary, and, the Court being advised, now issues the following memorandum opinion and order.

*FACTUAL AND PROCEDURAL BACKGROUND*

In 2018, Plaintiff Wendy VanDeraa—who was formerly named Wendy Marcum—took out a personal loan with Pioneer Credit Company ("Pioneer"). (Doc. 1 at ¶ 6). The annual percentage rate on the loan was 35.99% APR and it had a simple interest rate of 33.47%. (*Id.* at ¶ 8). Mariner Finance, LLC, ("Mariner") subsequently acquired Pioneer and became the successor in interest to the original note. (*Id.* at ¶ 9).

Plaintiff shortly thereafter defaulted on her loan. (*Id.* at ¶ 10). On November 7, 2019, Mariner sued Plaintiff in Grant County Circuit Court. (*Id.* at ¶ 11). Although Mariner was the named plaintiff in the case, it entered into an agreement with Defendant

1

James Bruce, an attorney who collects debts for creditors, whereby he undertook the collection efforts on behalf of Mariner. (*Id.*).

Plaintiff alleges that Defendant represented to the Grant County Circuit Court that the simple interest rate on the loan was 35.9%, when it was 33.47%. (Doc. 1-2 at 2). The court entered default judgment in favor of Mariner, but with the incorrect rate. (Doc. 1-3 at 2). In September of 2020, Plaintiff successfully moved the court to amend its judgment to reflect no pre-judgment or post-judgment interest. (Doc. 1-4 at 2).

Plaintiff initiated this action in December of 2020, alleging that Defendant, James Bruce, violated the FDCPA. Defendant moved to dismiss the case, but the Court denied the motion. (Doc. 12). Since then, the parties have been conducting discovery.

On August 1, 2021, Plaintiff signed a settlement agreement with Mariner (the "Agreement"). (Doc. 21-1). Plaintiff agreed to release Mariner, its attorneys, representatives, agents, or any other person who acted or purported to act on its behalf from any claims arising from the state court action. (*Id.* at 3-4).

It is unclear from the record how Defendant was made aware of the Agreement. Nonetheless, on September 8, 2021, Defendant's attorney, R. Brooks Herrick, emailed Plaintiff's counsel regarding the Agreement. Herrick's email states, in relevant part, "I have just learned that Wendy VanDeraa [has] also executed a settlement agreement and release . . . Thus, for the reasons set forth below,

2

Mr. Bruce also requests that a dismissal with prejudice be promptly filed by Ms. VanDeraa in [the above-captioned case]." (Doc. 21-2 at 3). Herrick gave Plaintiff's attorneys two days to respond and said that if Plaintiff failed to dismiss the claims, Defendant would "file a motion to enforce the settlement agreement." (*Id.*).

Counsel for Plaintiff, James McKenzie, responded to Herrick's email later that same day. (*Id.*). McKenzie explained that his firm was "evaluating the demand" but said they "likely will not have a response by the end of this week, i.e. 09/10/21 but expect to have one sometime next week." (*Id.*). Herrick responded and assured McKenzie that Defendant would not file a motion to enforce during this extension of time. (*Id.* at 2).

Unbeknownst to Defendant, on **September 15, 2021,** during the extension of time, Mariner drafted and signed an addendum to the Agreement (the "Addendum"). (Doc. 27-1 at 2). The Addendum was later signed by Plaintiff. The Addendum states: "the Parties hereby execute this Addendum to affirmatively clarify and state that the Release Paragraph 6 did not, and does not apply to, cover, or in any way release, the claims asserted by Consumer in [the above-captioned case]." (*Id.*). **Also on September 15, 2021,** McKenzie emailed Herrick and said that "the settlement agreement and release reached by these clients with Mariner Finance, LLC, does not release collection counsel." (Doc. 21-2 at 2).

3

Defendant subsequently filed a motion to enforce the Agreement, arguing that Plaintiff released her claims against him. (Doc. 21). He also moved for reasonable attorney's fees spent litigating this case. Plaintiff disputes this and argues that the Agreement is not broad enough to cover Defendant as an intended third-party beneficiary. (Doc. 27).

## *ANALYSIS*

"Because settlement agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law." *Smith v. ABN AMRO Mortg. Grp., Inc.*, 434 F. App'x 454, 460 (6th Cir. 2011) (citing *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992)). Accordingly, the Court will apply Kentucky law. The party claiming the breach of contract bears the burden of proof. *Canewood Oil Co. v. Cox*, 268 S.W. 1081, 1081 (Ct. App. Ky. 1925).

### A. The Original Settlement Agreement

The Court begins by determining whether the Agreement signed by Mariner and Plaintiff released Plaintiff's claims against Bruce. The primary question is whether Bruce was an intended third-party beneficiary entitled to enforce the settlement agreement.

Kentucky courts have not formally adopted the Second Restatement of Contracts. However, Kentucky courts have relied on sections of the Restatement when dealing with third-party beneficiaries, so it "provides a logical starting point for

4

discussion." *Louisville Gas and Elec. Co. v. Continental Field Sys., Inc.*, 420 F. Supp. 2d 764, 770 (W.D. Ky. 2005) (citing first *Stevens v. Stevens*, 798 S.W.2d 136, 139 (Ky. 1990) and second *United States v. Wood*, 877 F.2d 453, 459 (6th Cir. 1989)).

A non-party to a contract does not have standing to sue for a breach of contract unless he can show "that the contract was made and entered into directly or primarily for [his] benefit." *King v. Nat'l Indus., Inc.*, 512 F.2d 29, 32 (6th Cir. 1975) (quoting *Long v. Reiss*, 160 S.W.2d 668, 674 (Ky. 1942)). Someone is deemed an intended third-party beneficiary when "the circumstances indicate that the promisee intend[ed] to give the beneficiary the benefit of the promised performance." Restatement (Second) of Contracts § 302.

Under Kentucky law, there is a "presumption that the contracting parties did not intend to benefit a third party." *King*, 512 F.2d at 32. To overcome this presumption, the third party must proffer evidence that "the promisee's expressed intent is that the third party is to receive the performance of the contract in satisfaction of any actual or supposed duty or liability of the promisee to the beneficiary." *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 579 n. 12 (Ky. 2004).

Contract law is clear that "when no ambiguity exists, [the Court] look[s] only as far as the four corners of the document to determine the parties' intentions. The fact that one party may

5

have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms." *3D Enters. Contracting Corp. v. Louisville and Jefferson Cty. Metro Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005). The ambiguity of a contract is a question of law for the Court. *Id.*

The Court finds that the Agreement is unambiguous, and clearly expressed intent to benefit Bruce as a third-party beneficiary. There are several sections of the Agreement that help the Court reach this conclusion.

First, the Court looks at the language used in the recitals. One recital in particular states:

> WHEREAS, Mariner filed a lawsuit against Consumer in Kentucky state court captioned *Mariner Finance, LLC/Dry Ridge v. Wendy Marcum*, Case No. 19-C-00671 (Grant County District Court) ("the Legal Proceeding"), and the Consumer later challenged Mariner's legal rights **and/or litigation conduct either in the Legal Proceeding itself or in another forum (collectively "Legal Proceedings").**

(Doc. 21-1 at 2) (emphasis added).

The Court finds it notable that this Agreement mentions Plaintiff's challenge to the default judgment award, and also mentions a challenge to Mariner's litigation conduct. The recital notes that these challenges may have occurred in another forum. Plaintiff did not challenge Mariner's litigation conduct in state court, but rather sued Bruce, **not Mariner**, in federal court for FDCPA violations.

6

Second, the Court turns to the release section of the Agreement. The release section is extensive, but the relevant portions state:

> Consumer, on behalf of himself/herself . . . hereby releases and forever discharges Mariner, together with its present, former, and future parents, subsidiaries, predecessors, successors . . . employees, assigns, assignees, assignors, principals, trustees, collectors, shareholders, attorneys, nominees, insurers, insureds, representatives, administrators, indemnitees, indemnitors, agents, and each person or entity acting **or purporting to act on its behalf** (collectively, including Mariner, "Releasees"), from any and all claims . . . asserted or unasserted . . . resulting from anything arising or occurring prior to the Effective Date of this Agreement, without exception on limitation, including but not limited to **all claims relating or arising out of the Note, the Account, and Legal Proceedings, any credit reporting, and credit reporting disputes, or collection activities** or any activity whatsoever.

(Doc. 27-1 at 3-4) (emphasis added).

This language indicates that the parties considered and wanted to release from any claims two groups of people: those who *were acting* on Mariner's behalf and those who *were purporting to act* on Mariner's behalf. The contemplated releasees did not actually need to act on behalf of Mariner, they just had to give the outward appearance that they were. Bruce fits within this category of persons perfectly.

Mariner was the named plaintiff in the state court action against VanDeraa. But Mariner was not prosecuting the case through its own internal counsel. Instead, it hired Defendant to pursue claims against Plaintiff and other debtors on its behalf. It is

7

irrelevant then whether Bruce was an agent, independent contractor, or acted outside the scope of the representation agreement.[1] At all times in the state court case, he outwardly represented that he was acting on behalf of Mariner. Whether he deviated and acted for his own personal gain is irrelevant under the plain language of the Agreement.

Even more, the language of the release section explicitly states that all claims arising from the litigation proceedings or collection activities are released. The FDCPA is an act that establishes legal protection from abusive debt collection practices. The alleged wrongdoing in this case occurred when Bruce misrepresented the interest rate to the Grant County Circuit Court. Thus, Plaintiff's claim against Bruce arises from both the Litigation Proceedings referenced, and the collection activities referenced by the Agreement. The Agreement clearly intended to release Bruce from any potential claims brought by Plaintiff.

Third, the Court finds it worth discussing the Dismissal and/or Notice of Satisfaction section of the Agreement. (Doc. 21-1 at 4). In this section, the parties contemplated the dismissal of not just the state court case, which is clearly referred to as

---

[1] The parties disagree in their briefs whether Bruce is classified as an agent of Mariner or an independent contractor based on the representation agreement. (Doc. 27-2 at 8). The Court finds this agreement immaterial. The Agreement clearly considered the release of agents, independent contractors, and those who acted outside of the scope of the representation agreement, and therefore, the Court need not analyze the specifics of the relationship.

8

"the Legal Proceeding," but also the other "Legal Proceedings" in which Mariner's litigation conduct was challenged. The case before the Court is exactly that—it is a case where Plaintiff is challenging Mariner's litigation conduct.

Fourth, the Court looks to Section 17, which states:

> This Agreement shall inure to the benefit of, and shall be binding upon, each of the Parties hereto and their respective successors and/or assigns, and **each and every one of the Releasees shall be deemed to be third-party beneficiaries of this Agreement.**

(Doc. 21-1 at 6) (emphasis added). This cuts against Plaintiff's argument that at no point did she or Mariner consider Bruce to be a third-party beneficiary. Bruce was one of the only potential third-party beneficiaries involved in the collection of VanDeraa's debt. Section 17 supports a conclusion that the parties intended to benefit Bruce as a third-party beneficiary. Otherwise, they would not have contemplated such explicit language.

Therefore, the Court finds that the language of the Agreement unambiguously intended to benefit Defendant.

### B. Addendum to the Agreement

The Court must next consider the Addendum, and its applicability to the Court's analysis.

First, a court may not consider parol evidence when interpreting a contract unless the contract is ambiguous. *Schachner v. Blue Cross and Blue Shield of Ohio,* 77 F.3d 889, 893 (6th Cir. 1996). This is not the case here. The

9

Agreement was unambiguous and clearly intended to benefit Bruce. Therefore, the Addendem is inapplicable parol evidence.

Second, even if the Court construed the Addendum as a modification to the Agreement, it is still not enforceable.

It is a well-settled principle of contract law that the parties who are in privity of contract are free to make changes to the agreement as they see fit. Restatement of Contracts (Second) § 311(2). But this power is terminated when the beneficiary materially changes his position or otherwise manifests assent to the contract in a manner invited by the contracting parties. *Id.* §311(3), comment (h).

Bruce materially changed his position when his attorney emailed VanDeraa's attorney to demand release. Bruce was entitled to file a motion to enforce immediately upon learning of the Agreement. Instead, he relied upon McKenzie's representation that he was evaluating the demand, when in reality he was executing an Addendum that tried to alter the terms of the Agreement. This was clearly to Bruce's detriment. *See Seminary Woods, LLC v. Brown*, 2009-CA01769, 2011 WL 1196466, at *3 n.4 (Ct. App. Ky. 2011).

Bruce also assented to the terms of the Agreement. The Agreement calls for Plaintiff to immediately release the claims identified in the Agreement. The Agreement thus invites a non-released party to demand release. *See also Deckard v. General Motors Corp.*, 307 F.3d 556, 561–62 (7th Cir. 2002); *Detroit Bank*

10

*and Trust Co. v. Chicago Flame Hardening Co., Inc.*, 541 F. Supp. 1278, 1287 (N.D. Ind. 1982). Bruce assented to the contract when his attorney emailed VanDeraa's attorney and demanded release. *See Greenslate v. Tenneco Oil Co.*, 623 F. Supp. 573, 576–77 (E.D. La. 1985) (applying Restatement (Second) of Contracts § 311).

### C. Motion for Attorney's Fees

Bruce argues that Section 18 of the Agreement awards him reasonable attorney's fees for having to make court filings to enforce the Agreement. (Doc. 21-1 at 6). However, the Agreement clearly defines "Party" and "Parties" as only VanDeraa and Mariner. The Agreement does not contemplate the ability of Bruce or other releasees to recover attorney's fees.

Therefore, having heard the parties, **IT IS ORDERED** that:

1. Defendant's motion to enforce settlement and for attorney's fees, (Docs. 20, 21), be, and is hereby **GRANTED IN-PART AND DENIED IN-PART**. It is **GRANTED** with respect to enforcement of the Agreement and **DENIED** with respect to the attorney's fees.

2. A separate judgment shall enter concurrently herewith.

This 3rd day of August 2022.



Signed By:
*William O. Bertelsman* WOB
United States District Judge